FEDERAL INS. CO. et al. v. STARIN.

(District Court, S. D. New York. January 27, 1905.)

COLLISION—BARGE IN TOW AND ANCHORED YACHT—ANCHORAGE GROUNDS.

A steamer *held* in fault for a collision between her tow and an anchored yacht on the anchorage grounds in East river in the evening, and the yacht *held* not chargeable with contributory fault because she was not ringing fog signals, in the absence of clear evidence that the weather conditions were such as to require it.

In Admiralty. Suit for collision.

Black & Kneeland, for libellants.

Avery F. Cushman and James D. Dewell, Jr., for respondent.

ADAMS, District Judge. This action was brought by the Federal Insurance Company and the Sea Insurance Company to collect from John H. Starin the losses paid by them as insurers of the yacht Niagara, which was injured on the 6th of June, 1903, by a collision with the barge Starina, in tow of the steamer Laura M. Starin, both vessels being then owned by the respondent. The Niagara was at anchor off 28th or 29th Street, East River, on anchorage ground, on about 45 fathoms of chain, some 700 feet from shore, and the Laura M. Starin, with the Starina on her starboard side, and another barge, the Nelson, on her port side, containing an excursion party, were bound from Locust Grove, Cow Bay, for the respondent's pier No. 13 North River. The collision occurred about 10:45 o'clock P. M. The tide was ebb and carried the stern of the yacht to about abreast of 25th or 26th Street. The stern of the Starina struck the yacht's starboard quarter, doing some damage to her and to a small boat hung on davits at the side.

The yacht Rambler was also anchored in the vicinity, a little further down the river than the Niagara and about 400 feet further out in the stream.

The respondent defends on the ground that the yacht had no lights which were visible to those on the Starin or barges and was sounding no fog signals although the weather had been before and was at the time of the contact rainy, foggy and thick.

It appears that the Niagara was exhibiting the regulation riding lights. Having been run into by a moving vessel upon anchorage ground, it only remains to consider whether the Niagara was also in fault for not complying with the bell regulations, viz:

"Art. 15. * * *

In fog, mist, falling snow, or heavy rainstorms, whether by day or night, the signals described in this article shall be used as follows, namely:

. * * * * * * * * * * * *

(d) A vessel when at anchor shall, at intervals, of not more than one minute, ring the bell rapidly for about five seconds."

Act June 7, 1897, c. 4, 30 Stat. 99 [U. S. Comp. St. 1901, p. 2880].

It is claimed on the Niagara's behalf that the weather conditions at the time of or just before the collision, though rainy, were not such as to require the ringing of a bell; that shore lights could be distinctly seen as well as lights on the water fully a mile away; that the ferries at 34th Street and 23rd Street were not using fog bells nor other vessels in the vicinity.

The Starin claims that it got thick and misty just after she passed through the Gate and was on the west side of Blackwell's Island and continued so; that she then slowed her speed and rang the statutory bells, which she continued up to and subsequent to the time of the collision.

There is no outside testimony and it is one of those cases where the question of actual necessity for the ringing of a fog bell is dependent upon the testimony of witnesses from the colliding vessels. The Starin and her tow approached sidewise, heading towards Brooklyn, and her lookouts, such as they were, had a view forward only, they appeared to have the Rambler in view and were navigating to avoid collision with her. As has already been stated, the Niagara and boat were struck by the stern of the starboard barge and it was not known on the Starin or tow at the time that a collision had taken place. The quartermaster on watch on the yacht shouted to the steamboat to go ahead but the hails were not heard, probably because of the noise of music on the barges. It may well be doubted if the ringing of a bell would have been any more effective than the shouting under the circumstances. Not that the shouting could be deemed a substitute for the statutory requirement of a bell but that the failure to see the lights and hear the shouts is significant of the Starin's want of attention. It seems a case in which any doubt as to the necessity of a bell should be resolved against the Starin. Her faults were sufficient to account for the collision and clear proof of a contributing fault on the part of the yacht is necessary to impose any part of the burden of the collision upon her. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The Minnie, 100 Fed. 128, 40 C. C. A. 312.

Decree for the libellants, with an order of reference.